UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DWAYNE TRYALS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　Defendant. | Case No.: 08-cr-0256-L (7)<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 [ECF NO. 685];** |

Petitioner, Michael Dwayne Tryals ("Petitioner") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion" or "Mot"). The government filed a Response in Opposition ("Opposition" or "Oppo") to Petitioner's Motion, and Petitioner has replied ("Traverse"). The Court has reviewed the record, the submissions of the parties, and the supporting exhibits. For the reasons set forth below, the Court **DENIES** Petitioner's motion

## I. FACTUAL BACKGROUND

FBI agents began surveillance on Petitioner's criminal co-conspirator Lee Walker in 2007. As part of that effort, Walker's cell phones were wiretapped and video camera surveillance was conducted on his apartment. In numerous wiretapped calls, Petitioner and Walker discussed buying, supplying, or financing large quantities of crack cocaine. A drug expert testified regarding the significance of the amount of crack cocaine and the terminology used by Petitioner and Walker during their calls which used coded language to refer to the cost and amount of drugs. For example, in one recorded call, Petitioner told Walker that he went to Church's Chicken (code for his crack supplier) "to get a box of chicken . . . ten for five dollars [ten ounces of crack cocaine at $500 per ounce]," but that the supplier "only gave me eight pieces for the same amount of money." (Rptr's Tr. at 679-80 (Mar. 1, 2011)). Petitioner and Walker also used phrases such as "four sandwiches" and "four carne asadas" to refer to drug amounts. After the wiretapped cell phone calls, video camera surveillance and telephone records showed that Petitioner picked up crack cocaine at Walker's apartment on January 8, 2008 during both the morning and afternoon, shortly after Walker's supplier was seen making deliveries.

On January 16, 2008, FBI agents executed a search warrant at Petitioner's home in San Diego, California where they discovered digital scales with crack cocaine residue; nine cell phones; $1,360 in cash; an unused glass crack pipe; and assorted drug paraphernalia. Petitioner was arrested for conspiracy to distribute crack cocaine and was arraigned on a complaint the next day. On January 30, 2008, a grand jury charged Petitioner and 12 co-defendants in a 10-count indictment with conspiracy to distribute crack cocaine, which carried a 10-year mandatory minimum sentence.

During trial the jury received all the above referenced evidence including the cell phones, wiretap calls, crack cocaine, video surveillance evidence and also heard testimony about voice identification, drug distribution and business records linking Petitioner's phone to the evidence.

Petitioner now claims that he received deficient performance from trial and appellate counsel, and asserts a claim of actual innocence.

## II. PROCEDURAL BACKGROUND

Petitioner was charged in a Second Superceding Indictment on September 14, 2010 with conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841, 846. The Court conducted a jury trial from March 1, 2011 to March 3, 2011. On March 4, 2011, the jury returned a guilty verdict against Petitioner on Count 1. On September 14, 2011, this Court sentenced Petitioner to the mandatory minimum sentence of 240 months in custody with a 10 year term of supervised release to follow.

Petitioner appealed his conviction, and on May 15, 2013 the Ninth Circuit affirmed the conviction and sentence. *United States v. Tryals*, 525 Fed.Appx. 554 (9th Cir. 2013)(unpublished). On May 12, 2014, Petitioner filed the present motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, which he amended with leave of Court on July 28, 2014.

The government filed a response in opposition to Petitioner's motion on September 25, 2014, and Petitioner filed a Traverse on December 3, 2014. For the reasons set forth below, the Court denies Petitioner's motion.

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

To establish ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that: (1) the assistance provided by counsel fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To satisfy the deficiency prong of the *Strickland* test, the Petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" and was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at 687 (quoting in part *McMahan v. Richardson*, 397 U.S. 759, 771 (1970). In considering this issue, there is a "strong presumption that counsel's

3

conduct falls within a wide range of professional assistance." *Strickland*, 466 U.S. at 689. Moreover, courts typically find that *post hoc* complaints about the strategy or tactics that defense counsel employed are insufficient to satisfy the first prong of *Strickland*. *See, e.g., United States v. Simmons*, 923 F.2d 934, 956 (2d. Cir. 1991) (holding that appellant's displeasure with strategy employed by trial counsel was insufficient to establish ineffectiveness). Counsel's poor tactical decisions only amount to ineffective assistance when the defendant can produce enough evidence to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### 1. Claim One- Failure to File Timely Notice of Appeal

With regard to trial counsel, Petitioner claims his attorney Mr. David Bartick[1], promised to file a notice of appeal the day Petitioner was sentenced, but the notice of appeal was submitted much later. (Mot. 8)[2] The Government counters that Mr. Bartick did not promise to file an appeal the day of sentencing. Instead, Bartick asked to have new counsel appointed for Petitioner due to the potential conflict posed by Petitioner's plan to challenge trial counsel's performance. (Reporter's Transcript at 1338 (Sep. 12, 2011).)

The record belies Petitioner's contention. On the day Petitioner was sentenced, Bartick requested "that new counsel be appointed for Mr. Tryals on appeal" stating that he believed there would be "a conflict if I handle his appellate matter." (*Id.*). The Court appointed appellate counsel Jerald L. Brainin the next day, who filed a notice of appeal that day. (*Id.* at 1341). By acknowledging the potential conflict of serving as Petitioner's trial and appellate counsel, Bartick's representation fell within the range of competence required of criminal defense attorneys because the right to "conflict-free counsel" is

---

[1] Petitioner's trial counsel is now a United States Magistrate Judge, however, the Court will refer to him as "Mr. Bartick" or "Bartick," as that is how he was known during the trial court proceedings.
[2] The Court refers to the page numbers inserted on the top right corner per the Court's electronic filing system for consistency purposes.

guaranteed to defendants under the Sixth Amendment, and failure to provide such counsel constitutes grounds for ineffective assistance of counsel claims. *McMahan*, 397 U.S. at 771; *United States v. Baker*, 256 F.3d 855, 859-60 (9th Cir. 2001). Accordingly, Mr. Bartick's representation was not deficient for his failure to file a Notice of Appeal and this portion of Claim One fails.

### 2. Claim Three - Code-word Testimony

Petitioner faults trial counsel with failing to call a code-word expert and effectively cross-examine the prosecution's code-word expert in light of the fact that the prosecution relied heavily on references to code-words to demonstrate Petitioner's involvement with the drug transactions. (Mot. 16.) Petitioner contends that counsel's failure was made more prejudicial by the fact that the evidence against him was merely circumstantial, therefore, the code-word evidence was highly damaging. The Government contends there is no merit to Petitioner's claim arguing: 1) the Government did not call an expert witness but instead allowed the case agent to testify as a lay witness about the meanings of various coded words; 2) trial counsel made a strategic decision after thorough investigation to refrain from pursuing an attack on the code-word analysis for multiple reasons; and 3) evidence existed that Petitioner referenced dollar and drug amounts without using code words during some calls leading defense counsel to make a tactical decision to downplay the code words and focus on other weaknesses in the prosecution's case. (Oppo. 11-13.)

At trial, evidence was presented that Petitioner and his co-conspirators used code words to refer to both type and amount of drugs. For instance, when speaking to drug supplier Lee Walker, Petitioner said he was going to Church's Chicken (code for the crack supplier) "to get a box of chicken . . . ten for five dollars [ten ounces of crack cocaine at $500 per ounce]," but that the supplier "only give me eight pieces for the same amount of money." (Rptr's Tr. 679-80 (Mar. 1, 2011).) However, at other times, Petitioner and Walker did not use code words. In a phone conversation immediately following, Petitioner states that the drug cost "five thirty-five man, per ounce" without

5

using any code words. (*Id*. 680-81; Government Supplemental Excerpts of Record ("SER") at 1194 [ECF NO. 719.]) Similarly, in a November 16, 2007 phone call, Walker told Petitioner that "the minimum [sale] is like a hundred twenty-five [125 grams], like four and a half [4 ½ ounces]." (Rptr's Tr. at 730-32 (Mar. 2, 2011); SER at1242-43 [ECF NO. 719.])

Although Petitioner argues that his trial counsel erred by failing to call an expert in code word analysis to rebut the prosecution's expert, the Government did not utilize an expert witness but instead used the case agent to provide lay witness testimony about code words, with the Court's approval. (Gov't Motion in Limine at 14-16; Rptr's Tr. at 12; (Feb. 22, 2011); Rptr's Tr. at 671-682 (Mar. 1, 2011).) Moreover, defense counsel states he made a "strategic decision not to use a defense code word expert, as [he] believe[d] that contesting the code word analysis overtly during the presentation of evidence would be a losing battle that would hurt [his] credibility with the jury" noting that some of Petitioner's phone calls did not use code words. (Gov't Oppo., Ex. A, Affidavit of David Bartick at 1.) This decision was made after counsel employed a private investigator to determine whether there could be any non-drug related interpretation of the words, including research into whether Church's Chicken sold a ten piece meal during the relevant time for $5. (*Id*. at 3.) Trial counsel recollects that after procuring writs to transport many of Petitioner's former co-defendants to San Diego, California, to be interviewed, the individuals failed to exonerate Petitioner and admitted that "they did use words like 'chicken,' 'tacos,' and 'burritos' as code words for ounces of crack cocaine." (*Id*. at 3.) As a result, trial counsel chose to focus on the lack of drug seizures from Petitioner, the small number of times he was observed at Walker's apartment, and the lack of forensic evidence rather than focus on code-word evidence. (*Id*. at 4.)

As is clear from defense counsel's affidavit, he made a strategic decision to refrain from challenging the code-word evidence after engaging in focused investigation and weighing the advantages and disadvantages of attacking the code-word testimony.

1 *Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of
2 law and facts relevant to plausible options are virtually unchallengeable; and strategic
3 choices made after less than complete investigation are reasonable precisely to the extent
4 that reasonable professional judgments support the limitations on investigation.")
5 Instead, he chose to attack the circumstantial nature of the evidence via other paths, and
6 chose to maintain his credibility with the jury to ensure these arguments were well
7 received. Therefore the Court finds no deficient performance and denies Petitioner's
8 claim.

### 3. **Claim Four- Projected Image**

In his fourth claim, Petitioner contends that during opening statements the prosecution displayed a large image of him via a projector that had the word "Guilty" labeled across his face, yet trial counsel did not request a mistrial despite the clearly prejudicial effect of this incident. (Mot. at 24). Petitioner argues that he is certain the jurors saw the image because the Court instructed the jurors to turn on their monitors at the beginning of the prosecution's opening statements. (Traverse at 13.) Although trial counsel raised the issue before the Court and noted his concern about the image, he did not move for a mistrial, and did not accept the Court's offer to have the court clerk sworn in when she stated that the jurors could not see the image, which was a strategic error. (*Id*.) Petitioner argues that no curative instruction was given to the jurors compounding the error. (*Id*. 12.)

No such incident occurred according to the government. Instead, the last slide of the prosecution's opening statement Power Point presentation displayed the word "guilty" in all caps on a blank screen under the case name (which included Petitioner's name) and was visible only at counsel's table. (Oppo. 14-15). The jury did not see the image because the court clerk confirmed that the individual monitors were not activated at that time. There was no basis for trial counsel to object and request a mistrial in light of the fact that the image was not broadcast to the jurors. (*Id*.)

The Court finds no deficiency in trial counsel's performance. The record demonstrates that trial counsel raised the issue before the Court outside the presence of jurors when he stated:

> At the end of closing statements, I think just actually prior to the first witness taking the witness stand, flashed on our screen was a picture of Mr. Tryals, his name, and then "GUILTY" underneath it. I anticipate that that was part of a Power Point for Mr. Schopler for his closing. But it just concerned me that it was displayed on our computer monitor at counsel table. I have spoken to your clerk. It's my understanding that it wasn't displayed to the jury on their monitors, but I just wanted to make a formal record of it.

(Rptr's Tr. at 664 (Mar. 1, 2011).)

The Court confirmed with the courtroom clerk that the image was not displayed to the jury and the prosecutor stated it was a part of his opening statement Power Point but was not displayed to the jurors. (*Id*. at 664-65.) According to the sworn declaration provided by Mr. Bartick,

> The scene that Mr. Tryals describes, however, never happened. The prosecution never projected a photo of Mr. Tryals with the word "guilty" across his face, although the last slide of the prosecution's opening statement Power Point presentation did display the word "guilty" in all caps on a blank screen under the case name.

(Oppo. Ex. 1 at 4.)

Mr. Bartick stated that "the prosecution's opening statement and Power Point presentation were unobjectionable, as prosecutors routinely forecast to juries in opening that they will prove the defendant guilty beyond a reasonable doubt." (*Id*.)

Both the trial transcript and Mr. Bartick's sworn statement indicate that the image described by Petitioner was not displayed on the jurors' monitors. Even so, trial counsel made a record of the incident. Because the image of Petitioner was not displayed for the jury to see, Petitioner suffered no prejudice. The Court finds no error in trial counsel's failure to object and move for a mistrial as such demonstratives are permissible in openings and closings. *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982)("The

failure to raise a meritless legal argument does not constitute ineffective assistance of counsel"). For the foregoing reasons, the Court **DENIES** Petitioner's ineffective assistance of trial counsel claim on this ground.

### B. Appellate Counsel

The right to effective assistance of counsel on appeal is guaranteed to every criminal defendant. *Evitts v. Lucey*, 469 U.S. 387, 391-97 (1985). Ineffective assistance of appellate counsel claims are considered under the standard set forth in *Strickland* which requires that the Petitioner "show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014).

#### 1. Claim One- Speedy Trial Act

Petitioner claims that his appellate counsel failed to engage in meaningful discovery regarding the facts underlying his Speedy Trial Act claim and failed to challenge the Court's finding that his discovery motion had been abandoned for purposes of the excludable time calculation. (Mot. at 8). As a result of counsel's errors, Petitioner contends he was not able to challenge the Court's determination that he was entitled to only 54 days of non-excludable time when it should have been more than 200 days of non-excludable time under the Act and would have required dismissal of the indictment. (*Id.*)

In response, the Government notes that although Petitioner raised this issue during trial, on appeal, and now via collateral attack, this Court and three Circuit Judges previously ruled that his Speedy Trial Act claim was meritless. (Oppo. at 16.) In addition, the Government notes that if Petitioner is correct that his discovery motion was not abandoned but was pending until it was heard at the Speedy Trial Act hearing, all the time between the filing of the motion and the hearing would have been excluded from the 70 day clock, and his trial would have commenced within the allowable time, foreclosing a Speedy Trial Act violation claim. (*Id.*)

The record demonstrates that counsel did not render ineffective assistance for failing to pursue the Speedy Trial Act claim on Petitioner's behalf. Petitioner filed his discovery motion on January 8, 2009. [ECF NO. 180.] During the January 19, 2010, hearing, Petitioner contended that he had not been receiving discovery in a timely manner, to which the government responded that discovery production had concluded. (Rptr's Tr. at 276 (Jan. 19, 2010).) At that hearing, the Court told Petitioner that Bartick was preparing other motions to file and indeed, while the discovery motion was pending, a Motion to Dismiss the Indictment due to Speedy Trial Act Violation was filed on his behalf on June 3, 2010, which stopped the Speedy Trial Act clock from running. [ECF NO 456.] On June 17, 2010, the Court conducted a hearing on Petitioner's Motion to Dismiss under the Speedy Trial Act, at which time the parties acknowledged that the originally filed discovery motion had, in essence, been abandoned by the time the January 19, 2010 hearing occurred because, in part, all the requested discovery had been turned over. (Rptr's Tr. at 348, 352 (Jun. 17, 2010).)

Generally, a discovery motion will toll the Speedy Trial clock if there is a live dispute or if the motion is "continued until a date certain or the happening of an event certain." *United States v. Sutter,* 340 F.3d 1022, 1028-29, 1032 (9th Cir. 2003). Here, the Court concluded that the discovery motion was moot on January 19, 2010, which started the clock running again. By the time of the Speedy Trial Act hearing on June 17, 2010, 54 of the 70 days allowed under the Speedy Trial Act had elapsed. Because the facts demonstrate that the Court correctly calculated the excludable time under the Act, appellate counsel's choice to refrain from pursuing a meritless claim to challenge the Speedy Trial Act calculation on Petitioner's behalf was not objectively unreasonable. *Strickland*, 466 U.S. 687. Even if appellate counsel did not conduct any investigation or allow Petitioner to assist in his appeal, as Petitioner contends, there was no reasonable probability that he would have prevailed on appeal in light of the fact that there was no Speedy Trial Act violation. *Hurles*, 752 F.3d at 785. Finally, the government is correct that if Petitioner's discovery motion was pending from the time it was filed until the

hearing on the Speedy Trial Act motion, all that time would have been excluded under the Speedy Trial Act, which would ensure no violation. Accordingly, Petitioner's claim fails.

### 2. Claim Two- Sentencing Challenges

Petitioner argues that appellate counsel failed to challenge his 20-year mandatory minimum sentence despite the fact that 1) the sentence is "longer than authorized by the statute of the conviction;" 2) the Sentencing Guidelines are advisory and not mandatory, and 3) he is entitled to relief under *Alleyne v. United States*, 133 S.Ct. 2151 (2013). (Mot. at 13.)

In response, the Government argues that Petitioner's 20-year sentence was well within the authorized guidelines because the jury found Petitioner guilty of conspiracy to distribute 280 grams or more of crack cocaine, resulting in a statutory maximum possible sentence of life in prison. (Oppo. at 17.) In light of the fact that the statutory 20-year mandatory minimum applied, the Government contends that the advisory nature of the Guidelines is irrelevant. (*Id.*) Finally, the Government claims that *Alleyne* has no relevance to Petitioner's case. (*Id.*)

The Court finds no deficient performance in appellate counsel's failure to challenge the length of Petitioner's sentence because the statutes under which Petitioner was convicted authorize a sentence of up to life in prison, therefore, his 20-year sentence was not "longer than authorized by the statute of conviction." *See* 21 U.S.C. §§ 841(b)(1)(A)(iii) (any person who violates 841(a) "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life.") Moreover, Petitioner had a prior felony drug conviction which increased his penalty to a statutory 20-year mandatory minimum. *Id*. Although Petitioner claims that the Court, and not the jury, improperly found that he had the requisite predicate offense to support the mandatory minimum enhancement under *Alleyne*, findings such as the one made by the Court here have been upheld by the Ninth Circuit. *United States v Miller*, 568 Fed.Appx. 502, 503 (9th Cir. Apr. 11, 2014)(unpublished)("[A] prior conviction is a sentencing

11

08-cr-0256-L (7)

factor, not an element of the crime, therefore it need not be charged in the indictment or found by the jury.") Because Petitioner's sentence was statutorily authorized, any challenge would have been futile, therefore, appellate counsel did not render deficient performance for failing to appeal the sentence. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.")

### 3. Claim Five- Client Communication & Right to Counsel

In Claim Five, Petitioner argues that his appellate counsel failed to communicate with him for long periods of time, failed to act on Petitioner's requests, and neglected "exculpatory elements of issue[sic] such as conviction, sentencing and submitting motions." (Mot. at 23.) More specifically, Petitioner claims he had a right to assistance in filing his petition for certiorari with the United States Supreme Court under the Criminal Justice Act, 18 U.S.C. §3006 A, and Federal Rules of Criminal Procedure 44(a), but that his attorney, Brainin, refused Petitioner's request for help. (*Id*.)

The government disagrees, arguing that neither section 3006A nor Rule 44(a) guarantee a right to assistance of counsel for a writ of certiorari. (Oppo. at 17.) Instead, the government contends that a criminal defendant has no right to counsel for a discretionary petition for writ of certiorari, therefore the Court need not engage in a *Strickland* analysis of appellate counsel's performance. (*Id*. at 18.)

It is unclear from the Petition whether Petitioner is claiming that the lapses in communication with his appellate counsel relate to his desire to file a writ of certiorari to the Supreme Court, or whether they concern his ongoing appeal. To the extent he is complaining of counsel's perceived inadequacies as it relates to a writ of certiorari, Petitioner's claim is without merit, as the government correctly points out that a criminal defendant has no right to counsel for a discretionary petition of writ of certiorari. See *Smith v. Idaho*, 392 F.3d 350, 357 (9th Cir. 2004)("It is well-established that criminal defendants have no constitutional right to counsel beyond their first appeal as of right.")

As to Petitioner's contentions that appellate counsel did not communicate with him or respond in a timely fashion to requests, it is well-established that the right to effective representation includes the right to communicate with counsel during critical stages in the proceedings. *See Daniels v Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005.) However, here, Petitioner does not support his claim with specific facts but instead makes a cursory allegation that "Counsel Brainin began the appeal process with his client by not communicating with [sic] for long amount of time. By not responsing[sic] to any verbally[sic] or written request." (Pet at 28.) Although a Petitioner proceeding pro se enjoys great latitude with respect to pleading standards, bare allegations standing alone are insufficient to maintain a claim. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). The record reflects that some kind of breakdown occurred in the attorney-client relationship during the appellate process as Petitioner requested multiple extensions of time to file his opening brief and ultimately requested that Brainin be removed as counsel. However, the appellate court denied Petitioner's request, and Brainin timely filed the opening brief on May 25, 2012. *United States v. Tryals*, No. 11-50365 (9th Cir. May 25, 2012). The Court finds no support for Petitioner's claim that Brainin rendered deficient performance and notes that despite Petitioner's dissatisfaction with counsel, his appeal proceeded in a timely and efficient manner under Brainin's guidance. *See Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997). Accordingly, the Court denies Petitioner's claim.

6. **Claim Six- *Alleyne***

Petitioner argues that his sentence was wrongly increased from 120 months to a mandatory minimum of 240 when the Court determined that his prior conviction qualified as a sentence enhancing predicate offense despite the holding in *Alleyne*, 133 S.Ct. at 2151 that established that any factor which increases sentencing must be found by a jury. (Mot. at 29 [ECF No. 700.]) Because appellate counsel did not challenge the Court's finding, Petitioner claims his representation was deficient. (*Id.*)

The government counters that the holding of *Alleyne*, and its progeny, actually support and approve of the Court's determination that that Petitioner's prior conviction for a felony drug offense was a sentencing factor, not an element of the crime to be found by the jury. (Oppo at 18-19.)

The government is correct. In *Alleyne*, the United States Supreme Court held that "any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S.Ct. at 2155. An exception exists for prior convictions which are treated as sentencing factors and not as an "element" of the crime, and may therefore be found by a judge, not a jury, without running afoul of *Alleyne*. See *United States v. Pacheco-Zepeda,* 234 F.3d 411, 415 (9th Cir. 2000); *Alamendarez-Torrez v. United States*, 523 U.S. 224, 246 (1998). Here, Petitioner received a 20 year mandatory minimum sentence based on two findings: 1) the drug quantity, which the jury determined (Jury Verdict [ECF NO. 564.]); and (2) his prior felony drug offense conviction, which the Court determined. (Rptr's Tr. at 18 (Sep. 12, 2011) [ECF NO. 635.]) As a result, appellate counsel did not render deficient performance for failing to challenge the Court's sentencing determination in light of the fact that a prior conviction may warrant an enhancement. For the foregoing reasons, Petitioner's claim fails.

### 7. Claim Nine- Witness Testimony

Petitioner contends his appellate counsel did not challenge the trial testimony of witnesses who testified as both lay and expert witnesses, despite trial counsel's objections to that testimony during trial, and instead told Petitioner he must raise those issues on collateral attack in a section 2255 motion. (Mot. at 38 [ECF NO. 700.]) In response the government asserts that the claim has no merit because no fact witnesses gave any expert testimony. Instead, the Court permitted the government's case agent to translate various code words as a matter of lay opinion and allowed a few Spanish terms to be translated without any expert testimony. (Oppo. 20.) Further, to the extent the government called

expert witnesses, Petitioner received sufficient notice of the content of their testimony. (*Id.*)

Petitioner has not provided any facts supporting his allegation and does not give the name or subject matter of the testimony of any witness who allegedly wore two hats by testifying as both a lay and expert witness. Indeed, the Court has found no evidence in the record that any witnesses gave both lay and expert testimony, therefore, appellate counsel did not render ineffective assistance for refusing to pursue claims on direct appeal regarding "dual hat" testimony. *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002)("A failure to raise untenable issues on appeal does not fall below the Strickland standard.") Accordingly, Petitioner's claim fails.

### C. Claim Seven- Actual Innocence

In Claim Seven, Petitioner argues that there was insufficient evidence to support his conviction and sentence, yet appellate counsel did not challenge his conviction. (Mot. 34.) In response, the Government contends that Petitioner fails to present any evidence that he is actually innocent of the crime, and his argument that there was insufficient evidence fails because there was an abundance of evidence, as reflected by the statement of facts. (Oppo. 19.)

In order to establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S 298, 327 (1995). Here, Petitioner's claim is devoid of any facts or evidence supporting his claim. Moreover, the evidence overwhelmingly supported the jury's verdict. A search warrant executed at Petitioner's home yielded nine cell phones, over $1,000 in cash, two scales with crack cocaine residue on them, and assorted drug paraphernalia. (Rptr's Tr. 854, 860-61, 895, 900, 909, 926 (Mar. 2, 2011); Rptr's Tr. at 953-54, 981, 1002-06, 1010-11, 1123-25, 1131, 1148, 1150 (Mar. 3, 2011).) The FBI recorded multiple conversations between Petitioner and a crack dealer named Lee Walker via wiretap in which they discussed buying, supplying or financing over 3 ½ pounds of crack cocaine. (Rptr's Tr. at 991-1001 (Mar. 3, 2011); Rptr's Tr. at 1331 (Sep. 12, 2011).)

1 | After the conclusion of the wiretap, video camera surveillance and telephone call records showed Petitioner picking up crack cocaine at Walker's apartment twice. (Rptr's Tr. at 738-51 (Mar. 2, 2011); Rptr's Tr. at 1275-76 (Sep. 12, 2011).)

Petitioner's claim similarly fails even if the Court construes liberally construes it as an insufficient evidence claim. When addressing a sufficiency of the evidence claim, the Court asks, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence clearly supported the jury's finding of the elements of the crime with which Petitioner was charged, as indicated above. For the foregoing reasons, the Court denies Petitioner's motion on this ground.

### D. Claim Eight- 20 Year Sentence Enhancement

Petitioner argues that this Court erred when it found that his 1997 conviction under California Penal Code section 11378 for possession of methamphetamine for sale qualified as a felony involving drugs that triggered the 20-year statutory maximum sentence. (Mot. 35.) Instead, Petitioner contends section 11378 does not categorically qualify as a drug trafficking offense because 1) it criminalizes more substances than are included in the controlled substances act, and 2) the federal term "drug trafficking offense" does not include "transportation of a controlled substance for personal use, and offers to transport, sell, furnish, administer or give away a controlled substance," citing *United States v. Descamps*, 133 S.Ct. 2276 (2013). (Mot. 35-37). In response the Government asserts that *Descamps* is inapplicable here because Petitioner's conviction for possession of methamphetamine for sale in violation of Cal. Health & Safety Code §11378 is a "prior conviction for a felony drug offense" under 21 U.S.C. § 841(b)(1)(A) which triggers the statutory 20-year minimum mandatory. (Oppo. 20.)

"[U]nder the categorical approach set forth in *Taylor*, courts 'look only to the fact of conviction and the statutory definition of [a] prior offense' to determine whether that prior offense can be used for a sentencing enhancement under the federal Guidelines."

*United States v Valdavinos-Torres,* 704 F.3d 679, 691 (9th Cir. 2012)(internal citations omitted). Where a state statute is overbroad because it criminalizes conduct which would not constitute a drug trafficking offense under federal sentencing law, a prior conviction under that statute "does not categorically qualify as a basis for enhancing [a] defendant's sentence." *Id*. In that case, the court must turn to the so-called "modified categorical approach" in which the Court conducts a "limited examination of documents in the conviction record to determine if there is sufficient evidence to conclude whether the defendant was convicted of the elements of the generically defined crime, even though Section 11378 is facially over-inclusive." *Valdavinos-Torres,* 704 F.3d at 687.

In the present case, Petitioner pled guilty in San Diego Superior Court case number SCD 122199 to felony possession of methamphetamine for sale pursuant to California Health & Safety Code § 11378 on May 9, 1997. (Information to Establish Prior Conviction, Notice of Penalty Enhancement, Ex E-3 [ECF NO. 555-3.]) The Ninth Circuit has held that "California's controlled substances schedules are broader than their federal counterparts and punish some substances not included in the Controlled Substances Act, 21 U.S.C. § 802. See, e.g., *Valdavinos-Torres*, 704 F.3d at 687; *Ruiz–Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir.2007)(abrogated on other grounds; *Cabantac v. Holder*, 736 F.3d 787, 792 (9th Cir.2013) (same). As a result, this Court conducts the modified categorical approach and looks to the charging documents to determine whether the elements of the section 11378 conviction meet the definition of a "drug trafficking offense" as defined under Section 2L1.2(b)(1)(A). *Valdavinos-Torres*, 704 F.3d at 687. The Court may look to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States,* 544 U.S. 13, 16 (2005)(abrogated on other grounds).

The court documents in Petitioner's underlying conviction include the felony complaint, information, guilty plea form, judgment and abstracts of judgment. (Info. to Establish Prior Conv., Notice of Penalty Enhancement Exhibits 1-5 [ECF NO 555-1-5.])

Petitioner was charged in Count 1 of the Felony Complaint and Information, with "possession for purpose of sale a controlled substance, to wit, methamphetamine." (*Id.* Ex. 551-E1,2). In the Plea of Guilty form, Petitioner initialed the box indicating he was pleading guilty to Count 1, the violation of section 11738 listed in the Complaint and Information. (*Id.* Ex 551-E3). Finally, the Judgment indicates that Petitioner was committed to the Department of Corrections to a term of 4 years on count 1 for a violation of section 11378. (Not. Ex 551-E4). Each of these documents references section 11378 which provides a sufficient link to show that Petitioner pled guilty to possession of methamphetamine for sale. *See Valdavinos-Torres*, 704 F.3d at 692.

Because methamphetamine is one of the drugs listed on the federal controlled substances schedules, Petitioner's prior conviction is a "drug trafficking offense" as defined under Section 2L1.2(b)(1)(A) and serves as a predicate for the 20 year sentencing enhancement. *See* 21 U.S.C. §841(b)(1)(1)(A). ("If any person commits a violation under section 841 "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment.") In light of the above, Petitioner's claim that his underlying conviction does not support the 20 year sentencing enhancement lacks merit and is denied.

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255.

**IT IS SO ORDERED**

Dated: 8/9/2017

Hon. M. James Lorenz
United States District Judge

18
08-cr-0256-L (7)